**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**EDWARD AUTHENMENT, III**                                        **CIVIL ACTION**


**VERSUS**                                                                         **NO. 10-2107**


**INGRAM BARGE COMPANY et al.**                            **SECTION "H"(4)**



<u>**ORDER & REASONS**</u>

      Before the Court is Defendant West of England Shipowners Mutual Insurance Association's Motion to Stay Pending Arbitration.  (R. Doc. 88-1.)  For the following reasons, the Motion to Stay is GRANTED.  Plaintiff is compelled to arbitrate his claims against West of England Shipowners Mutual Insurance Association, and the above-captioned matter is STAYED pending that arbitration.

**BACKGROUND**

      Plaintiff alleges that he developed acute myelogenous leukemia as a result of his exposure to dangerous products while working as a tankerman and pilot for several towboat owners between 1977 and 1994.  (R. Doc. 26., ¶¶ V-VIII.)  One of these companies was Gulf Intracoastal

Towing ("Gulf"), which employed Plaintiff from 1986 to 1990. (*Id.* ¶ VII.) Gulf was dissolved in 1994

and released from this case on April 6, 2011. (R. Docs. 51-52.) Subsequently, Plaintiff amended

his Complaint, naming "West of England P&I" as insurer of Gulf as a defendant. (R. Doc. 57.) In

reality, the West of England Shipowners Mutual Insurance Association (Luxembourg) ("West of

England") was the protection and indemnity (P&I) insurer of Gulf from March 7, 1986 until

February 20, 1991. Plaintiff's Complaint invoked this Court's admiralty jurisdiction. (R. Doc. 26, ¶

I.)

West of England is a P&I club that provides insurance pursuant to a Certificate of Entry

("Certificate"). One court has described P&I insurance as follows:

> [T]he insurer is an association of shipowners who engage in providing insurance. The
> association is referred to as the club, and the insured is the member. To obtain coverage,
> the member enrolls a vessel with the club. The rules of the club and the quotation are the
> contract of insurance.

*Triton Lines, Inc. v. Steamship Mut. Underwriting Assoc. (Bermuda) Ltd.,* 707 F. Supp. 277, 278 (S.D.

Tex. 1989). In this case, the Certificate outlines the particulars of the insurance coverage, and

these particulars apply to all members. The Certificate expressly adopts West of England's rules

of association (" the Rules") as governing Gulf's insurance coverage. (R. Doc. 88-2.) Taken

together, the Rules and Certificate constitute the applicable insurance contract. Here, the Rules

include both a choice of English law provision and an arbitration agreement.

On October 3, 2011, West of England filed a Motion to Stay Pending Arbitration. (R. Doc.

88-1.)  Plaintiff opposed the Motion on October 11, 2011 (R. Doc. 90), and West of England filed

its Reply on October  20, 2011 (R. Doc. 93).  The Court took the Motion under submission on

October 19, 2011.  For the following reasons, the motion is granted, and the case is stayed pending

arbitration.

## LAW & ANALYSIS

This Court addressed a similar situation in *Anthony Todd v. Steamship Mut. Underwriting*

*Assoc., Ltd.,* No. 08-1195, 2011 WL 1226464 (E.D. La. March 28, 2011)[1].  West of England argues

that under *Todd* it is entitled to have the case stayed pending arbitration.  It contends that the

present case is factually indistinguishable from *Todd,* and no reason exists for the Court to rule

differently here.  In contrast, Plaintiff argues that staying the case is inappropriate because West

of England has not provided a complete copy of the insurance contract or the Rules of Association.

Additionally, Plaintiff urges the Court to distinguish this case from *Todd* and decline to enforce the

arbitration agreement as contrary to the public policy of Louisiana.  As explained below, the Court

finds portions of *Todd* distinguishable from the facts of this case.  The most important of these

---

[1]In *Todd*, a seaman was injured while working on a vessel that Delta Queen Steamboat
Company ("Delta Queen") owned.  The seaman won a judgment against Delta Queen in state
court; however, Delta Queen filed for bankruptcy and the judgment was not satisfied.  The
plaintiff then sued Delta Queen's P&I insurer under Louisiana's direct-action statute.  The
insurer sought to stay the case pending arbitration, based upon an arbitration agreement in
Delta Queen's contract with its P&I insurer.  The plaintiff opposed arbitration, arguing that as a
non-signatory the arbitration agreement did not bind him.  The Court, however, found that
under the FAA and the Convention, the plaintiff was obligated to arbitrate his claims.

distinctions is that the Court sits in admiralty in the current case, while in *Todd* it sat in diversity. Nonetheless, the Court finds that the arbitration agreement in this case is enforceable against Plaintiff.

Regardless of the jurisdictional distinction, portions of the *Todd* opinion guide the Court's analysis here.  In *Todd*, the Court followed a three-step analysis in finding that arbitration was appropriate.  First, the Court examined a complete copy of the applicable rules to determine whether the agreement clearly addressed whether a  non-signatory could be compelled to arbitrate.  *Id.* at *3.  Second, the Court analyzed what law applied to determine whether the plaintiff must arbitrate.  *Id.* at *4.  In making this determination, the Court especially focused on the choice of law clause in the policy selecting English law as the governing law.  *Id.* at *5.  Lastly, the Court considered whether all of the plaintiff's causes of action fell within the arbitration provision.  *Id.* at *8.  The Court follows the same three-step analysis in the current case.

       I.      *The Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act*

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") governs cases in which a party seeks to compel arbitration outside of the United States.  *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.,* 601 F.3d 329, 332 n.4 (5th Cir. 2010).  The United States joined the Convention in 1970.  *Aggrao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012).  Congress implemented the Convention by enacting Chapter 2 of Title

9 of the United States Code ("the Convention Act"). *Id.*; 9 U.S.C.A. § 201 *et seq.* (West 2012). The Supreme Court has explained that "[t]he goal of the Convention was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Id.* (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). The Convention applies to arbitration agreements between citizens of nations that are signatories to the Convention. The United States, Luxembourg, and England are all signatories. 31 Daniel R. Coquillette et al., Moore's Federal Practice - Civil § 909.02 (3d ed. 2012); Contracting States, The New York Arbitration Convention (June 25, 2012), http://www.newyorkconvention.org/contracting-states.

"The Convention Act incorporates the entire Federal Arbitration Act ("FAA") to the extent that the two do not conflict." *Todd,* 2011 WL 1226464, at *2 (citing 9 U.S.C. § 208). The FAA governs the validity and enforceability of an agreement to arbitrate in the United States and explicitly applies to any maritime transaction. 9 U.S.C.A. § 2. A district court's power to order arbitration under the FAA, however, is limited to arbitrations that will take place "[w]ithin the district in which the petition for an order directing such arbitration is filed." *Todd,* 601 F.3d at 332 n.4. As a result, the Convention governs when a party seeks to compel arbitration outside of the United States. *Id.*

Under the Convention Act, "[a] court having jurisdiction under this chapter may direct that

arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  9 U.S.C.A. § 206.  "The Convention and its implementing legislation do not explicitly authorize staying litigation pending arbitration, and thus parties whose arbitration agreements fall under the Convention have had to seek authority for stays under 9 U.S.C. sec 3, a provision of the domestic FAA."  *Todd,* 601 F.3d at 332.  Under the Convention and the Convention Act, courts "[s]hould compel arbitration if (1) there is an agreement in writing to arbitrate the disputes, (2) the agreement provides for arbitration in the territory of Convention signatory, (3) the relationship arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen."  *Francisco v. Stolt Achievement MT,* 293 F.3d 270, 273 (5th Cir. 2002)).

The parties do not dispute that the four factors outlined in the previous paragraph are met in this case.  Rather, the present dispute arises because West of England seeks to enforce the arbitration agreement against a non-signatory of the agreement.  Plaintiff is a third party to the insurance contract who brought claims against West of England under Louisiana's direct-action statute and argues that as a non-signatory the arbitration agreement is not enforceable against him.

II.     *Whether the Rules Clearly Address Whether a Non-Signatory May be Bound to Arbitrate*

The Court finds that West of England's Rules prior to 1989 did not clearly address whether

a non-signatory may be bound to arbitrate. As amended in 1989, however, the Rules clearly

contemplated binding a non-signatory to arbitration. West of England argues that the arbitration

clauses in this case fit squarely within the rationale this Court articulated in *Todd*. Plaintiff, on the

other hand, argues that the "New York Suable clause" and the definition of "member" within the

insurance contract in this case demonstrate that the arbitration clause was not meant to apply to

third parties seeking to enforce that contract.

> From 1986 to 1989, the Rule 62 of the Rules provided:

> Rule 62. Arbitration

> If any difference or dispute shall arise between a Member or former member claiming
> under these Rules and the Association of or in connection with these Rules or any bye law
> made thereunder or arising out of any contract between the Member or former Member
> and the Association or as to the rights or obligations of the Association or the Member or
> former Member thereunder or in connection therewith or as to any other matter
> whatsoever, such difference or dispute shall be referred to the Arbitration in London of a
> sole legal Arbitrator.

(R. Doc. 88, Exs. 17-19.) In 1989, however, the first sentence of Rule 62 was modified to read: "If

any difference or dispute shall arise between a Member or former Member *or any other person*

claiming under these Rules . . . ." (R. Doc. 88-7, Exs. 20-22) (emphasis added).

> The Court finds that, beginning in 1989, the Rules clearly contemplated enforcing the

arbitration agreement against third parties. "[I]f the terms of an agreement clearly address

whether a non-signatory can be bound to arbitrate, then courts need not inquire whether non-

signatories can be bound under third party beneficiary theory or other doctrines." *Todd,* 601 at

336.  Accordingly, at the very least, West of England can compel Plaintiff to arbitrate any claims arising under an insurance contract issued in 1989 or later.

Prior to 1989, however, the Court finds that the arbitration agreement did not clearly contemplate enforcing the agreement against non-signatories.  The arbitration clause considered in *Todd* was similar to the pre-1989 clause at issue in this case.   In *Todd*, the applicable rules provided a two-step process for resolving claims:

    a.      If any difference or dispute shall arise between a Member and the Club concerning the construction of these rules or of the Rules applicable to any Class in the Club or of any Bye-Law passed thereunder, or the insurance afforded by the Club under these Rules, or any amount due from the Club to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Directors.

    b.      If the member does not accept the decision of the Directors the difference or dispute shall be referred to the arbitration of two arbitrators, one to be appointed by each of the parties, in London, and the submission to arbitration and all the proceedings therein shall be subject to the provisions of the English Arbitration Act[.]

*Todd,* at \*3.  The Court agreed with the parties that the Rules did not specifically address third parties.  *Id.*  The defendant further argued, and the Court agreed, that the silence of the rules meant that the law of the forum must determine the issue.  *Id.*  The plaintiff, however, like Plaintiff in the current case, argued that the definition of "member" in the contract's New York Suable clause established that the Rules did not contemplate third parties invoking the arbitration procedure.  *Id.*  The *Todd* Court found that the New York Suable clause, including its definition of member, applied only to cases brought in the Southern District of New York and was therefore

inapplicable to a case brought in Louisiana.  *Id.* at *4.

In this case, the Court also finds that the New York Suable clause does not apply to this case because it was not brought in the Southern District of New York.  Like the contract in *Todd,* the contract in this case limits the definition of member upon which Plaintiff relies to "this clause" (the New York Suable clause).  (R. Doc. 88, Exs. 17-19 ("When used in this clause, the word 'member' shall include . . . .").)  As such, the definition of member upon which Plaintiff relies is inapplicable to this case.  As it is not clear from the applicable Rules prior to 1989 whether a third party can be bound to arbitrate under the contract, the Court must next determine which law applies to that question.

III.     *Choice of Law Analysis*

A court must answer two separate questions when deciding whether to compel arbitration. First, the court must determine whether a valid arbitration agreement exists that binds the litigating parties.  *Todd,* 2011 WL 1226464, at *4.  Second, the court must determine whether the arbitration agreement applies to the claims before it.  *Id.*  Before addressing these questions, however, the court must determine which law applies to each question.  *Id.*  The Court finds that federal maritime law governs the first of these questions.  English law governs the second.

When analyzing a choice of law issue, federal courts apply the choice of law rules of the forum.  As this Court sits in admiralty, federal maritime law is the law of the forum, and the Court applies federal choice of law rules.  Choice of law provisions are generally enforceable under

federal maritime choice of law principles. The chosen law of the parties, however, applies only to substantive questions. The law of the forum applies to procedural questions. Whether a valid arbitration agreement exists is a procedural question, and the Court will applies the law of the forum, or federal maritime law, to answer it. In contrast, the question of whether the claims in this case are within the scope of the arbitration agreement is a substantive question. Accordingly, the Court applies English law to that question.

In the Fifth Circuit, "[i]t is well-settled that a marine insurance policy is a maritime contract within federal admiralty jurisdiction." *Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 886 n. 2 (5th Cir. 1991) (internal citations omitted). As this Court sits in admiralty, it applies federal choice of law rules. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.,* 585 F.3d 236, 243 (5th Cir. 2009) (internal citation omitted). Under federal choice of law rules, the first question the Court asks is whether the contract includes a valid choice of law provision. *Id.* at 242-43. "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Id.* at 242. In general, courts will uphold a choice of law provision in a marine insurance contract unless doing so would be unreasonable or unjust. *Id.* (internal citation omitted). Put differently, "[u]nder admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Id.* at 243 (citing *Hale v. Co-Mar Offshore Corp.,* 588 F. Supp. 1212, 1215 (W.D. La. 1984)).

"[T] Restatement (Second) of Conflicts of Law provides the proper model for resolving maritime choice of law problems." *Cardinal Shipping Corp. v. M/S Seisho Maru,* 744 F.2d 461, 464 (5th Cir. 1984) (internal citations omitted). Under the Restatement Second, the parties' choice of law, however, applies only to the "local law" of the chosen state and not to the chosen state's choice of law rules.[2] Restatement (Second) of Conflicts of Law § 8 cmt. a (1971). The forum state still applies its own choice of law rules. *Id.* Under federal maritime choice of law rules, the law of the forum applies to procedural questions. *Id.* § 122. The chosen law of the parties applies to substantive questions. *Id.*

The Court finds that the choice of law provision selecting English law is enforceable. The parties do not dispute that the clause is enforceable. No party has made a showing that English law has no "substantial relationship to the transaction" or "conflicts with the fundamental purposes of maritime law." Accordingly, the Court applies English law to any substantive questions and federal maritime law to any procedural questions.

The question of whether a non-signatory can be bound to arbitrate is a procedural one.

---

[2]In *Todd*, the Court invoked the doctrine of renvoi and applied the whole of English law, including English choice of law rules, under a similar choice of law clause. Renvoi is generally disfavored. *Arochem Corp. v. Wilimi, Inc.,* 962 F.2d 496, 498 n.3 (5th Cir. 1992); Restatement (Second) of Conflicts of Law § 8. In this case, the result is the same regardless of whether the Court invokes renvoi. Under either scenario, the Court would ultimately apply federal maritime law to procedural questions and English law to substantive questions. Accordingly, the Court declines to follow *Todd* in this regard.

*Todd,* 2011 WL 1226464, at *6.  Accordingly, the Court applies the law of the forum, or federal maritime law, to determine whether Plaintiff can be compelled to arbitrate as a non-signatory.  *See SLS Shipbuilding Co., Ltd. v. Ionia Mgmt. S.A.,* No. H-11-271, 2011 WL 2652365, at *2 (S.D. Tex. July 5, 2011) (quoting *Otal Investments Ltd. v. M.V. Clary,* 494 F.3d 40, 50 (2d Cir. 2007) (noting that the law of the forum of federal courts sitting in admiralty is federal maritime law)).

In contrast, the question of whether Plaintiff's claims are included within the scope of the arbitration agreement is a substantive question.  *Todd,* 2011 WL 1226464, at *6.  As English law is the chosen law of the parties to the contract, the Court applies English law to answer this question.  The Court will now address each of these questions under the appropriate law.

IV.    *Whether a Non-Signatory May be Compelled to Arbitrate Under Federal Maritime Law*

As previously explained, this Court applies federal maritime law to the question of whether a Plaintiff may be compelled to arbitrate.  The Court recognizes that under federal maritime law state law often governs marine insurance disputes.[3]  In the instant case, however, it is unnecessary for the Court to decide whether federal maritime law or state law applies.  Plaintiff can be compelled to arbitrate as a non-signatory under both federal law and Louisiana state law.

---

[3]Under the Supreme Court's decision in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, courts interpret contracts of marine insurance under state law, so long as no specific and controlling federal rule exists on the issue.  *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310 (1955); *Boudreaux v. Shannon Marine, Inc.*, 875 F.2d 511, 513 (5th Cir. 1989).

Although Plaintiff's Complaint does not mention Louisiana's direct-action statute, the parties seem to agree that he brought his claims against West of England under that statute.[4] While Plaintiff is not a party to the contract between West of England and Gulf, his suit against West of England seeks to enforce the terms of that contract. Louisiana's direct-action statute allows an injured person to bring suit directly against the insurer of an insolvent insured and provides that:

> any action brought under provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy are not in violation of the laws of this state.

La. Rev. Stat. Ann. § 22:1269 (2012). "The Louisiana Supreme Court has held that "[t]he direct action statute does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *Todd,* 2011 WL 1226464, at *6 (quoting *Descant v. Admin. of Tulane Educ. Fund,* 639 So. 2d 246, 249 (La. 1994)). As a result, a plaintiff suing under Louisiana's direct action

---

[4]The result would be the same even if Plaintiff claimed to bring suit directly against West of England under federal maritime law. Federal circuit courts have found that "[f]ederal admiralty law neither authorizes nor forecloses a third party's right to directly sue an insurance company." *Morewitz v. West of England Ship Owners Mut. Prot. and Indem. Ass'n,* 62 F.3d 1356, 1362 (11th Cir. 1995) (internal citations omitted); *see also Kiernan v. Zurich Co.,* 150 F.3d 1120, 1121-22 (9th Cir. 1998); *Aasma v. Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc.,* 95 F.3d 400, 403-404 (6th Cir. 1996). As a result, except under unusual circumstances, "[a] state's direct action statute is given effect in admiralty actions." 1 Benedict on Admiralty § 113 (7th rev. ed. 2000).

statute does not have an independent cause of action against the insurer. *Id.* Instead, a direct-action plaintiff "merely stands in the shoes of [the insured] and is bound by the terms of its policy with [the insured]– provided the conditions of the policy do not violate Louisiana law." *Id.*

The federal Fifth Circuit has adopted the direct-benefits estoppel theory and estopped plaintiffs from avoiding arbitration clauses in contracts that they seek to otherwise enforce. *Todd,* 2011 WL 1226464, at *7 (internal citations omitted). Courts apply direct-benefit estoppel when a non-signatory "knowingly exploits the agreement containing the arbitration clause." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 518 (5th Cir. 2006) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)). When a non-signatory brings suit against a signatory based upon the agreement, "the courts seriously consider applying direct benefits estoppel.'" *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.,* 345 F.3d 347, 361-62 (5th Cir. 2003)).

Similarly, Louisiana courts have applied the direct-benefits estoppel theory when enforcing arbitration agreements against non-signatories. As Louisiana arbitration law and federal arbitration law are similar, "Louisiana courts routinely look to federal jurisprudence when interpreting state arbitration law." *Id.* at *7 (citing *Aguillard v. Auction Mgmt Corp.,* 908 So. 2d 1, 25 (La. 2005)). Under the direct-benefits estoppel theory, "[a] party is estopped from repudiating an arbitration clause in a contract which he has previously embraced." *Id.* In other words, a "[p]arty cannot have it both ways; he cannot rely on the contract when it works to its *[sic]* advantage and then repudiate

it when it works to his disadvantage." *Shroyer v. Foster,* 814 So.2d 83, 89 (La. App. 1 Cir. 2002), *superseded by statute on unrelated grounds*.

This Court finds that under either federal maritime law or Louisiana state law Plaintiff can be bound as a non-signatory under the arbitration agreement. Like the plaintiff in *Todd,* Plaintiff here seeks to enforce the terms of a contract between an insurer and its insured. Plaintiff cannot embrace the contract when it works to his benefit and repudiate the contract when it works to his detriment. Plaintiff claims clearly are based on the insurance contract between Gulf and West of England, as his claims are based on the actions of Gulf, not the actions of West of England. He has embraced the terms of the contract between Gulf and West of England, and as a result, the arbitration agreement in that contract is enforceable against him.

*V.      Whether Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement*

The Court finds that scope of the arbitration agreement in this case is broad. As a result, the Court must stay the proceedings and allow the arbitrator to decide whether Plaintiff's claims are within the scope of the agreement.

The section of the Rules governing the scope of the arbitration agreement was consistent through the relevant years. Rule 62 states that "any difference or dispute" arising "out of or in connection with these Rules or any bye law made thereunder" is subject to arbitration. As previously discussed, the Court applies English law to determine whether Plaintiff's claims are within the scope of the arbitration agreement between Gulf and West of England.

15

Fed. R. Civ. P. 44.1 provides that "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1 (2012); *see also McGee v. Arket Intern., LLC,* 671 F.3d 539, 546 (5th Cir. 2012).  Affidavits from experts on the foreign law are one way of making this showing.  *See McGee,* 671 F.3d at 546.  "The court's determination must be treated as a ruling on a question of law."  Fed. R. Civ. P. 44.1*;  McGee,* 671 F.3d at 546.

West of England provided with its Motion an affidavit containing the opinion of an expert in English law on the issue of the scope of the arbitration clause.  According to this affidavit, the reference to "any difference or dispute" in Rule 62 is "[a]n extremely broad and all-encompassing dispute resolution provision which would include claims stated (or their English equivalent) in the Petition."  (R. Doc. 88-7, p. 3.)  Plaintiff provides no example or interpretation of English law controverting this position.  Accordingly, the Court finds that the scope of the arbitration agreement is broad under English law.

When an arbitration clause is broad, the court must stay the action to allow the arbitrators to determine whether the dispute is within the scope of the clause.  *Hornbeck Offshore Corp. v. Coastal Carriers Corp.,* 981 F.2d 752, 755 (5th Cir. 1993).  "Section 3 of the FAA, 9 U.S.C. § 3, provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement."  *Id.* at 754-55 (citing *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.,* 801 F.2d 748, 751 (5th Cir. 1986)).  The stay is mandatory.  *Id.*  So long as the issues in

the case are within the scope of the arbitration agreement, a district court does not have discretion to deny the stay. *Id.* As the Convention does not take a position on staying proceedings pending arbitration, the Convention incorporates Section 3 of the FAA to the extent that it authorizes stays. *Todd,* 601 F.3d at 332.

The Fifth Circuit distinguishes broad arbitration clauses from narrow ones. *Id.* at 755. If the arbitration clause is broad, the district court should stay the proceedings and allow the arbitrators to determine whether the dispute is within the scope of the clause. *Id.* (quoting *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil,* 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985)). If the clause is narrow, however, the court should not stay the proceedings unless it finds that the dispute is within the scope of the clause. *Id.* "[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Id.* (quoting *Mar-Len of La., Inc. v. Parsons-Gilbane,* 773 F.2d 633, 635 (5th Cir. 1985)). The weight of the presumption in favor of arbitration is heavy. *Id.* As the clause in this case is broad, the Court must stay the proceedings pending arbitration.

VI.    *Plaintiff's Argument that Compelling Arbitration Violates Public Policy*

Plaintiff argues that the Court should not enforce the choice of law or forum-selection clauses in the present case because doing so would be against Louisiana's public policy. Specifically, Plaintiff argues that Louisiana's direct action statute prohibits arbitration agreements and choice of law provisions in insurance contracts such as the one in this case. In addition,

17

Plaintiff argues that La R.S. 23:921 prohibits forum-selection clauses unless they are expressly, knowingly, and voluntarily agreed to and that an employer may not bind its employee to an arbitration agreement. Lastly, Plaintiff argues that enforcing the arbitration agreement against him would deny him his rights to assert his Jones Act claims and claims under Louisiana law.

A. *Louisiana's Prohibition on Arbitration Clauses in Insurance Contracts*

The Court in *Todd* addressed Plaintiff's argument under Louisiana's direct action statute, and the Court follows that reasoning here. The plaintiff in *Todd*, like Plaintiff here, argued that the Court could refuse to compel arbitration since Louisiana prohibits arbitration agreements in insurance contracts. The Fifth Circuit, however, has held that the Convention supersedes La. Rev. Stat. § 22:868. *Safety Nat'l,* 587 F.3d at 732. In addition, the Supreme Court has held "[t]hat even though the Convention contemplates exceptions to arbitrability based on domestic law, in implementing the Convention Congress did not specify any matters that should be excluded from its scope." *Todd,* 2011 WL 1226464, at *10 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 639 n.21 (1985)). Without express instructions from Congress, the Supreme Court will not recognize "[a]ny subject matter exceptions to the Convention." *Id.* Accordingly, the Convention applies to Plaintiff's claims against West of England, and he must arbitrate them.

B. *Louisiana's Prohibition on Forum-Selection Clauses in Employment Contracts*

The Court finds Plaintiff's argument that the choice of law and forum-selection clauses are

18

unenforceable as a violation of Louisiana public policy against allowing employers to bind their employees to arbitration is unconvincing. In making his argument, Plaintiff relies on the decision of the Louisiana Supreme Court in *Sawicki v. K/S Stavanger Prince* and on La. Rev. Stat. § 23:921A(2).

The Court finds that *Sawicki* and La. Rev. Stat. § 23:921A(2) are inapplicable to the current case. Both the statute and *Sawicki* apply to employment agreements, not insurance contracts. The language of the statute limits its application to employment contracts and collective bargaining agreements. La. Rev. Stat. § 23:921A(2) (limiting the prohibition on forum-selection and choice of law clauses to those "[i]n an employees contract of employment or collective bargaining agreement"). Similarly, *Sawicki* addressed a situation in which an employer sought to bind its employee to a forum-selection clause in a collective bargaining agreement that was incorporated into the plaintiff's employment contract. *Sawicki,* 802 So.2d at 600.

Plaintiff's argument is that, given Louisiana's public policy against allowing an employer to bind its employees to arbitration agreements, "[i]t follows that [West of England], standing in the place of the employee, could not bind the employee to a contractual term that the employer could not imposes [*sic*]." (R. Doc. 90, p. 9.) This argument misconstrues the operation of Louisiana's direct action statute. As previously discussed, under Louisiana's direct action statute, Plaintiff stands in the shoes of Gulf. *Todd,* 2011 WL 1226464, at *6. West of England does not stand in the place of Plaintiff. Gulf is not seeking to bind its employee to an arbitration agreement as *Sawicki*

19

and La. Rev. Stat. § 23:921A(2) prohibit.  Instead, West of England seeks to bind Plaintiff, standing in the shoes of Gulf, to an arbitration provision in an insurance contract.  Accordingly, *Sawicki* and La. Rev. Stat. § 23:921A(2) do not render the arbitration agreement unenforceable against Plaintiff.

C.  *Prospective Waiver of Statutory Remedies*

Lastly, Plaintiff argues that the Court should decline to enforce the arbitration agreement against him because doing otherwise would "effectively [strip him] of his rights to assert his Jones Act claims as well as his rights and remedies under Louisiana law."  Plaintiff, however, presents no law in support of this argument.  Although the Court in *Todd* addressed a similar prospective waiver argument, *Todd* is distinguishable from the case before the Court on this point.  In *Todd*, the plaintiff made this public policy argument at the "award-enforcement" stage of the proceedings.  Here, however, Plaintiff makes this argument at the "arbitration-enforcement" stage.  The Court finds that the prospective waiver argument is inappropriate at this stage in the proceedings.

Presumably Plaintiff believes that, given the applicable choice of law clause, compelling arbitration would deny him his right to pursue his federal statutory claims and would contravene United States public policy under the Supreme Court's "prospective waiver doctrine."  *Aggarao,* 675 F.3d at 371.  Under that doctrine, the Supreme Court recognized that it would have little hesitation condemning an agreement as contrary to public policy when "[c]hoice-of-forum and choice of law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies . . . ."  *Id.* (citing *Mitsubishi,* 473 U.S at 637 n.19).  The Supreme Court later

qualified its position, however, and recognized that "[a] prospective waiver would contravene public policy only when there is 'no subsequent opportunity for review' in federal court." *Id.* (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 540 (1995)). In *Sky Reefer*, the Supreme Court noted that challenging arbitration as contrary to public policy was "premature" when it has not been established "what law the arbitrators will apply . . . or whether [the plaintiff would] receive diminished protection as a result." *Id.* at 372 n.15 (quoting *Sky Reefer,* 515 U.S. at 540). Since the defendants sought only to compel arbitration and not to dismiss the case, the district court "[r]etained jurisdiction over the case and [would] have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of [American] laws ha[d] been addressed." *Id.*

As a result, the Fourth and Eleventh Circuits[5] have recognized that public policy defenses in Convention cases must be brought at the "award-enforcement stage" rather than at the "arbitration-enforcement stage." *Id.*; *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1253 (11th Cir. 2011). In other words, a plaintiff may challenge arbitration on public policy grounds only after an

_____

[5]The Fifth Circuit has not addressed this issue. *See Asignacion v. Rickmers Genoa Schiffahrts*, No. 11-627, 2011 WL 2118740, at *4 (E.D. La. May 25, 2011.) Although the Eastern District of Louisiana has previously declined to compel arbitration in a similar case on prospective waiver grounds, that decision was based on the Eleventh Circuit's decision in *Thomas v. Carnival Corp.,* 573 F.3d 1113 (11th Cir. 2009). *Id.* at *6. Since the Court entered the *Asignacion* decision, however, the Eleventh Circuit has recognized that its holding in *Thomas* was incorrect.

arbitral award has been made and the court is "[c]onsidering whether to recognize and enforce an arbitral award." *Lindo*, 652 F.3d at 1263 (citing Convention, art. V).

This situation is exactly the one presented in the current case. A ruling that compelling arbitration would violate United States public policy would be premature at this stage. In fact, it remains possible that the London arbitrator will apply United States law to Plaintiffs' claims. *See Aggarao,* 675 F.3d at 373 n.16. Plaintiff's argument is more appropriate made at the "award-enforcement" stage of the litigation. Accordingly, the Court will not invalidate the arbitration agreement as a prospective waiver of rights contrary to United States public policy.

The Court must compel arbitration. Under the Convention and the Convention Act, courts "[s]hould compel arbitration if (1) there is an agreement in writing to arbitrate the disputes, (2) the agreement provides for arbitration in the territory of Convention signatory, (3) the relationship arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Francisco v. Stolt Achievement MT,* 293 F.3d 270, 273 (5th Cir. 2002)). As these four criteria are met, and no other reason exists for Plaintiff to avoid arbitration, the Court stays the proceedings in the above-captioned matter and compels Plaintiff to arbitrate his claims against West of England.

**CONCLUSION**

For the reasons previously stated, West of England's Motion to Stay Pending Arbitration is granted.  The proceedings in the above-captioned matter are stayed, and Plaintiff is compelled to arbitrate his claims against West of England.

New Orleans, Louisiana, this 13th day of July, 2012.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE