**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**EDWARD AUTHEMENT**                                   **CIVIL ACTION**

**VERSUS**                                             **NO: 10-2107**

**INGRAM BARGE COMPANY, ET AL.**                       **SECTION: "H"(4)**

## ORDER AND REASONS

Before the Court are cross Motions for Summary Judgment filed by Defendants Kinder Morgan Bulk Terminals, Inc., Kinder Morgan Liquids Terminals, LLC, and Kinder Morgan Energy Partners, LP (collectively "GATX"), Defendant Valero Refining Texas, LP ("Valero"), and Plaintiff. For the following reasons, GATX's Motion (R. Doc. 216) is GRANTED, and Plaintiff's cross Motion (R. Doc. 209) is DENIED AS MOOT. Valero's Motion (R. Doc. 197) is DENIED, and Plaintiff's cross Motion (R. Doc. 210) is GRANTED IN PART.

1

## BACKGROUND

This is a maritime personal injury action originally brought by Plaintiff Edward Authement.[1] Plaintiff worked as a tankerman on various vessels in navigation from 1977 to 1993. Plaintiff alleges that he loaded and unloaded chemicals containing benzene at petrochemical facilities owned and operated by GATX and Valero. Plaintiff further alleges that he contracted Acute Myelogenous Leukemia as a result of his exposure to benzene.

Plaintiff filed suit in July 2010. His second amended complaint named seventeen defendants, and asserted causes of action under the Jones Act and the general maritime law. The only remaining Defendants are GATX and Valero. Plaintiff has asserted causes of action against each for negligence under the general maritime law and strict products liability. It is undisputed that neither GATX nor Valero was Plaintiff's Jones Act employer.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2012). A genuine issue of fact exists only "if the evidence is such that a reasonable jury

---

[1] Edward Authement passed away during the pendency of this action. Mary Authement—the Independent Administrator of the Succession of Edward Authement—has been substituted as Plaintiff. For ease of reference, the Court refers to Edward Authement as "Plaintiff" in the instant Order.

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted). "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise

properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).


## LAW AND ANALYSIS

GATX and Valero have each moved for summary judgment and seek dismissal of all claims against them.  Plaintiff has also moved for summary judgment as to certain affirmative defenses asserted by each Defendant.

I.    <u>GATX's Motion for Summary Judgment</u>

GATX moves this Court for the entry of summary judgment, dismissing Plaintiff's claims for products liability and negligence under the general maritime law.  The Court addresses each claim in turn.  For the following reasons, the Motion is granted, and GATX is hereby dismissed.

A.  *Products Liability*

The Supreme Court has recognized products liability as part of the general maritime law. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986).  "The general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."  *Id.* (citations omitted).  In developing the general maritime law, courts have consulted state law as well as the Restatement of Torts.  *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987) (citations omitted).  Thus, the initial question before the Court is  whether to apply state law, the Restatement, or some combination of both to this maritime products liability action.  The Fifth Circuit has not definitively addressed this issue.  *See Hebert v. Outboard Marine*

4

*Corp.*, 638 F. Supp. 1166, 1170 (E.D. La. 1986) (recognizing lack of guidance).   Numerous courts, however, have embraced Section 402A of the   Restatement (Second) of Torts as the "best expression" of the law of products liability under the general maritime law.   *Ocean Barge Transp. Co. v. Hess Oil Virgin Islands Corp.*, 726 F.2d 121, 123 (3d Cir. 1984) (collecting cases); *see also Hebert*, 638 F. Supp. at 1170 (same);  1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5–7 (5th ed. 2012) ("The applicable substantive law of products liability in admiralty is Section 402a of the Restatement (Second) of Torts.").   Indeed, both the Supreme Court and the Fifth Circuit have applied  the Restatement (Second) of Torts in maritime products liability cases.   *See, e.g.*, *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997); *Vickers*, 822 F.2d; *Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330 (5th Cir. 1984); *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir. 1976).   Other sections of this Court have applied Section 402A as well.   *See, e.g.*, *Cargill, Inc. v. Degesch America*, *Inc.*, 875 F. Supp. 2d 667 (E.D. La. 2012); *Penn Mar., Inc. v. Rhodes Elec. Servs., Inc.*, No. 11–02761, 2012 WL 3027937 (E.D. La. July 24, 2012); *Daigle v. L&L Marine Trans. Co.*, 322 F. Supp. 2d 717 (E.D. La. 2004).   Moreover, by applying the Restatement in maritime products liability cases, "the Court furthers the federal interest in establishing uniform rules of maritime law."   *Transco Syndicate #1, LTD v. Bollinger Shipyards, Inc.*, 1 F. Supp. 2d 608, 614 (E.D. La. 1998) (citation omitted).

Section 402A provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

       (a) the seller is engaged in the business of selling such a product, and
       (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

       (a) the seller has exercised all possible care in the preparation and sale of his product, and
       (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The threshold inquiry under Section 402A is whether the defendant is a seller or manufacturer of the allegedly defective product.[2] *See Daigle*, 322 F. Supp. 2d at 727; 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5–7 (5th ed. 2012).  The record is clear that GATX neither sold nor manufactured the products of which Plaintiff complains.  Rather, as Plaintiff concedes in his briefing, GATX provided "a simple pick up and drop off location" for various oil and chemical companies.  (R. Doc. 242.)  In other words, manufacturers and refiners contracted with shipping companies to transport products to and from GATX's storage facilities.  GATX merely provided bulk

---

[2] Although the Restatement only uses the term "seller," "manufacturers of defective products are also swept within its ambit."  *Reyes v. Wyeth Labs.*, 498 F.3d 1264, 1272 n.10 (5th Cir. 1974); Restatement (Second) of Torts § 402A cmt. f.

storage services.

Plaintiff nonetheless contends that GATX is liable under Section 402A as a "distributor" who "places a product on the market or introduces it into the stream of commerce." (*Id.*) This argument is unpersuasive for multiple reasons. First, while comment f to Section 402A provides that liability may extend to a "distributor," the reference is made in the context of describing when a person is "engaged in the business of *selling* products," under Section 402A 1(a). Restatement (Second) of Torts § 402A cmt. f (emphasis added). There is nothing in Section 402A or its comments to suggest liability extends beyond one who sells or manufactures products. To the contrary, Section 402A and the comments repeatedly use the terms "sell," "seller," and "selling" when describing the scope of liability. Moreover, Black's Law Dictionary defines a "distributor" as a "wholesaler, jobber, or other manufacturer or supplier that *sells* chiefly to retailers and commercial users." Black's Law Dictionary (9th ed. 2009) (emphasis added).

Second, extending liability to entities such as GATX that act merely as conduits in the stream of commerce is inconsistent with the policy justifications for imposing strict liability. As explained in comment c, "by *marketing* his product for use and consumption, [the seller or manufacturer] has undertaken and assumed a special responsibility towards any member of the consuming public." Restatement (Second) of Torts § 402 cmt. c. (emphasis added). Thus, the "public has a right to and does expect . . . that reputable *sellers* will stand behind their goods." *Id.* (emphasis added). And finally: "public policy demands that the burden of accidental injuries caused by products intended

7

for consumption be placed *upon those who market them*." *Id.* (emphasis added).  Thus, only a defendant who plays an active role in marketing products to the public, *i.e.*, a seller or manufacturer, should be subject to the "special rule" of strict liability.  *See* Restatement (Second) of Torts § 402A cmt. a.

Third, the case law cited by Plaintiff—most of which is non-binding state court precedent—does not support his expansive interpretation of liability under Section 402A.  (*See* R. Doc. 242 n.10.)  The few Fifth Circuit authorities cited apply primarily Louisiana law, only tangentially discussing the Restatement.  *See generally Reeves v. AcroMed Corp.*, 103 F.3d 442 (5th Cir. 1997); *CNG Producing Co. v. Columbia Gulf Transmission Corp.*, 709 F.2d 959 (5th Cir. 1983); *Fruge's Heirs v. Blood Servs.*, 506 F.3d 841 (5th Cir. 1975).  More importantly, the limited discussion of the Restatement in these cases does not support whatsoever the extension of liability to GATX.

Given the foregoing, the Court finds that GATX is neither a manufacturer nor seller under Section 402A.  Accordingly, the products liability claim against GATX is dismissed.

B.  *Negligence*

Negligence is an actionable wrong under the general maritime law.  *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005) (citations omitted).  "The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law." *Id.* (citation omitted).  To state a claim for relief, the plaintiff must demonstrate that: (1) the defendant owed a duty; (2) the defendant breached that duty; (3) the plaintiff sustained damages;

and (4) the defendant's wrongful conduct caused his damages.  *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (citations omitted).

GATX moves for summary judgment on the ground that it does not owe any duty to Plaintiff.  Specifically, GATX argues that to the extent any duties were owed to Plaintiff, such duties were imposed solely upon Plaintiff's Jones Act employers, the owners of the vessels on which Plaintiff served, and vessel operators.  In support of this argument, GATX notes that a Jones Act employer has a non-delegable duty to provide a seaman with a reasonably safe place to work.  Similarly, GATX argues the duty to furnish a seaworthy vessel is a non-delegable duty owed by the owner of a vessel.  Finally, GATX cites certain federal regulations which, according to GATX, establish that vessel operators are charged with the duty to supervise cargo transfer and warn of dangerous products.

The existence of a duty *vel non* is a question of law.  *In re Great Lakes*, 624 F.3d at 211 (citation omitted).  Whether a duty is owed "depends on a variety of factors, 'most notably the foreseeability of the harm suffered by the complaining party.'"  *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 377 (5th Cir. 2000) (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)).  In the context of maritime torts, the Fifth Circuit has defined the concept of foreseeabilty:

> We perceive a harm to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a

9

> probable result of the act or omission, considering the interplay of
> natural forces and likely human intervention.

*Consol. Aluminum*, 833 F.2d at 68.  Thus, the issue before the Court is whether Plaintiff's exposure to benzene was a harm of the general sort to a person of a general class that a reasonably thoughtful owner of a shoreside warehouse facility would have anticipated as a probable result of its failure to warn,[3] in light of anticipated natural forces and likely human intervention.  As the question makes clear, the Court's analysis does not focus on the particular injury suffered, but on the general risk of exposure to toxic chemicals.  Similarly, the Court  does not focus on Plaintiff himself, but on the general class of tankermen.  Therefore, the dispositive inquiry in this case is whether harm resulting from a tankerman's exposure to hazardous chemicals would be anticipated by a reasonably thoughtful owner of a shoreside warehouse facility as a probable result of its failure to warn, considering the interplay of natural forces and likely human intervention.

There are multiple layers of "likely human intervention" which affect this analysis.  First, as explained more fully *infra*, the manufacturer of a toxic chemical is required to provide warnings and instructions for safe use to the ultimate users of its product.  Second, under the federal regulations cited by GATX, a vessel operator is required to post a document that identifies all hazardous materials to be handled, warns of hazards in handling the materials, and provides

---

[3] GATX disputes that it failed to provide any warnings to Plaintiff.  The Court makes no finding as to this issue.  Rather, the Court merely assumes the factual predicate solely for the purpose of answering the legal question of whether GATX owed a duty, *i.e.*, whether the harm suffered was a foreseeable consequence of the allegedly tortious conduct.

instructions for safe handling during transfer operations.[4]  Third, a reasonably thoughtful owner of a shoreside warehouse facility might anticipate that some combination of the tankerman's employer, the entity (if any) with whom the tankerman's employer contracted to move the chemicals, and the vessel owner would apprise the tankerman of the chemicals to be transferred and any attendant dangers.  When viewed in the aggregate, these "likely" forces of human intervention strongly reduce the possibility that a tankerman would be harmed by exposure to toxic chemicals due to a failure to warn.  This is not to say, however, that a tankerman could never suffer harm from exposure to toxic chemicals due to inadequate warnings at a shoreside warehouse facility.  The non-occurrence of all three conditions enumerated above is certainly possible (albeit highly unlikely).  In other words, it is possible that the manufacturer of the toxic chemicals could fail to warn, that the vessel operator could fail to post the procedures required by federal regulations, and that the tankerman's employer and/or the vessel operator could fail to warn the tankerman of the hazard associated with handling certain products.  Indeed, this is precisely what Plaintiff alleges happened in the case *sub judice*.  Nonetheless, as the Fifth Circuit has emphasized in maritime tort cases, the mere possibility of injury does not create a duty.

---

[4] 33 C.F.R. § 155.720 requires "[t]he *operator of a vessel* with a capacity of 250 or more barrels of oil, hazardous material, or liquified gas" to establish "transfer procedures" that meet certain requirements. (emphasis added).  Such transfer procedures must be permanently posted where they can be "easily seen and used by members of the crew when engaged in transfer operations," 33 C.F.R. § 155.740(c), and must contain a list of each product transferred, 33 C.F.R. § 155.750(a)(1).  This list must identify the product transferred by "general or chemical name," warn "of hazards involved in handling the [product]," and provide "instructions for safe handling of the [product]."  33 C.F.R. §§ 155.750(a)(1)(ii); 154.310(a)(5)(ii).

Rather, the injury must be a *probable* result of the negligent conduct.  *See Republic of France v. United States*, 290 F.2d 395, 401 (5th Cir. 1961) ("There must be knowledge of a danger, not merely possible, but probable."); *Consol. Aluminum*, 833 F.2d at 68 (finding that harm is not foreseeable unless it "might have been anticipated by a reasonably thoughtful person . . . as a probable result of the act or omission"); *In re Great Lakes*, 624 F.3d at 211 (finding that plaintiffs must demonstrate that defendants "reasonably should have foreseen that the sequence of events leading to their damages . . . would be a *probable* result of [their] negligent acts") (emphasis in original).

Plaintiff argues this Court should derive a duty of care from certain federal regulations (other than those cited by GATX).[5]  Specifically, Plaintiff argues that GATX's alleged violation of these regulations constitutes a breach of duty under the general maritime law.[6]  But this argument presupposes its legal predicate—the existence of a duty.  Because Plaintiff's damages were not a probable result of GATX's alleged failure to warn, the Court need not look to positive law to determine whether GATX breached a duty.  *See In re Great Lakes*, 624 F.3d at 211 n.10 (declining to address whether violation of federal regulations constituted breach of duty where plaintiffs failed to prove duty was owed in the first place).

---

[5] In maritime actions, the duty of care may be derived from statutes and regulations.  *See In re Int'l Marine, LLC*, No. 12–538, 2013 WL 3293677, at *2 (E.D. La. June 28, 2013) (citations omitted); 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5–2 (5th ed. 2012).

[6] Plaintiff cites multiple federal regulations, such as 33 C.F.R. § 154, and 33 C.F.R. § 126.

II.    Plaintiff's Cross Motion for Summary Judgment as to GATX

The Court has granted GATX's motion for summary judgment.  Because no claims remain against GATX, Plaintiff's cross motion for summary judgment is denied as moot.

III.    Valero's Motion for Summary Judgment

As did GATX, Valero moves for the dismissal of Plaintiff's claims for negligence and products liability.  The Court addresses each claim in turn.  For the following reasons, the Motion is denied.

A.  *Products Liability*

As a preliminary matter, Valero contends the Court need not address the merits of Plaintiff's product liability claim, *i.e.*, whether the product was unreasonably dangerous.  Specifically, Valero argues that it had no "legal duty" to warn Plaintiff.  (R. Doc. 197.)  That duty, Valero argues, is owed by Plaintiff's Jones Act employers, by the owner of Plaintiff's vessels (according to the doctrine of unseaworthiness), and by Plaintiff's vessel operators (according to certain federal regulations).

Valero erroneously conflates the concepts of negligence, unseaworthiness, and strict products liability.  That Plaintiff may have causes of action for negligence or unseaworthiness does not foreclose recovery against a manufacturer for an allegedly defective product.  *See Lewis v. Timco, Inc.*, 716 F.2d 1425, 1433 (5th Cir. 1983) (Politz, J., dissenting) ("A negligence action focuses on conduct, specifically the quality of the act causing the injury; a strict products liability action focuses on the product itself.").  Whereas negligence and unseaworthiness actions focus on the relationship between specific plaintiffs and defendants, "[s]trict products liabilty concerns itself

13

with the relationship between the manufacturer and society as whole." *Id.* Moreover, the comments to Section 402A specifically recognize that strict liability is a "special rule" that "does not preclude liability based upon the alternative ground of negligence." Restatement (Second) of Torts § 402A cmt. a.; *see also id.* at cmt. m ("The liability stated in [Section 402A] does not rest upon negligence.  It is strict liability.")  Indeed, plaintiffs often join causes of action for negligence, unseaworthiness, *and* products liability in the same suit.  *See generally Williams v. Brasea, Inc.*, 497 F.2d 67 (5th Cir. 1974); *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir. 1976); *Vickers*, 822 F.2d.  Finally, Valero cites no authority, nor can this Court find any, to support its argument that the availability of a Jones Act negligence claim and/or a claim for unseaworthiness precludes a cause of action for strict products liability as a matter of law.

In order to prevail on a products liability claim under Section 402A, a plaintiff must establish: (1) that the defendant sold or manufactured the product; (2) that the product was unreasonably dangerous or defective when it left the defendant's control; and (3) that the defect caused the plaintiff's injury.  *See Daigle*, 322 F. Supp. 2d at 727; 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5–7 (5th ed. 2012).  Valero does not dispute its status as a manufacturer.

Under Section 402A, a product is defective only if it is "unreasonably dangerous" to the ultimate user or consumer.  Restatement (Second) Torts § 402A(1).  A product may be unreasonably dangerous due to lack of adequate instructions or warnings.  *See Reyes v. Wyeth*

14

*Labs.*, 498 F.2d 1264, 1273–75 (5th Cir. 1974).  Two comments to the Restatement elaborate upon this theory of liability.  Under comment j, a manufacturer must warn of dangers which the manufacturer either knows or should know at the time the product is sold.  *Pavlides*, 727 F.2d at 338 (interpreting Restatement (Second) of Torts cmt. j); *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1088 (5th Cir. 1973) (same).  In determining the scope of this duty, "the manufacturer is held to the knowledge and skill of an expert."  *See Borel*, 493 F.2d at 1089; *Pavlides*, 727 F.2d at 338 (citation omitted).  Comment k recognizes a certain subspecies of products—those which are "unavoidably unsafe" because they are incapable of being made safe for their ordinary and intended use.  Restatement (Second) of Torts § 402A cmt. k.  Comment k clearly applies in the instant case, because commercial products containing benzene "possess[] both unparalleled utility and unquestioned danger."  *Borel*, 493 F.2d at 1088.

In general, an unavoidably unsafe product must be accompanied by proper directions and proper warnings.  *See Alman Bros. Farms & Feed Mill, Inc. v. Diamond Labs., Inc.*, 437 F.2d 1295, 1303 (5th Cir. 1971) ("It is well recognized that [under comment k] an adequate warning and proper instructions *must* be given to a potential user of the product.") (emphasis added); *Davis v. Wyeth Labs., Inc.*, 399 F.2d 121, 128–29 (9th Cir. 1968) ("As [comment k] stresses . . . strict liability is avoided . . . *only* where sale is accompanied by proper directions and proper warnings.")

(emphasis added) (footnote omitted);[7] *Reyes*, 398 F.2d at 1275 ("Failure to give such a warning [when comment k applies] will itself present a 'defect' in the products and will, without more, cause the product to be 'unreasonably dangerous as marketed.'") (footnote omitted); *Borel*, 493 F.2d at 1089 ("[A]s comment k makes clear . . . the seller . . . has a responsibility to inform the user or consumer of the risk of harm.  The failure to give adequate warnings in these circumstances renders the product unreasonably dangerous.").  When the danger associated with a product is "sufficiently obvious," however, a defendant is relieved of its obligation to warn.  *See Borel*, 493 F.2d at 1093; *Hagans v. Oliver Machinery Co.*, 576 F. 2d 97, 102 (5th Cir. 1978) ("It is generally held that there is no duty to warn when the danger or potentiality of danger is obvious or is actually known to the injured person.").  A danger is sufficiently obvious when it is "generally known and recognized" by the ultimate user or consumer writ large.  *See Jackson v. Coast Paint & Lacquer Co.*, 499 F.2d 809, 812 (9th Cir. 1974); Restatement (Second) of Torts § 402A, cmts. j.; i.

Valero argues that the general awareness of the dangers associated with handling benzene obviated any duty to warn.  Consequently, Valero argues, its products were not unreasonably dangerous under Section 402A.  The entirety of Valero's argument consists of a one-sentence excerpt from the Fifth Circuit's decision in *Martinez v. Dixie Carriers, Inc.  Martinez*, however, is distinguishable.

---

[7] The Fifth Circuit has repeatedly cited *Davis* with approval in failure-to-warn cases under Section 402A.  *See, e.g.*, *Borel,* 493 F.2d at 1090; *Reyes*, 498 F.2d at 1276; *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 466 (5th Cir. 1976).

The plaintiff in *Martinez* died from exposure to noxious fumes after stripping a barge that had been used to transport Hydrol-D—a petrochemical mixture containing a substantial concentration of benzene.  529 F.2d at 460.  His surviving spouse filed a wrongful death action against, *inter alia*, the manufacturer of Hydrol-D for negligence and strict product liability.  *Id.*  In assessing both claims, the court found the following facts particularly important:  (1) the plaintiff and his co-employees were advised prior to stripping the barge that it contained a residue of "dripolene, the generic name in the industry for a common industrial substance that [the manufacturer] marketed under the trade name 'Hydrol-D,'" *id.*; (2) the barge was equipped with large permanent signs on the main deck with the words, "Warning, Dangers Cargo, No Visitors, No smoking, No Open Lights," *id.* at 462 (internal quotation marks omitted); (3) at the time of loading, the manufacturer placed a benzene warning card on the barge, in compliance with Coast Guard regulations,[8] *id.*; (4)  the manufacturer only marketed Hydrol-D to other industrial users for use in the manufacture of gasoline and did not contemplate that Hydrol-D would be sold to or used by the general public, *id.* at 463;  (5) the hazards of handling benzene are generally appreciated in the maritime industry, *id.*; and (6) the plaintiff's employer had extensive experience in cleaning shoreside tanks and employed "experienced professionals," *id.*

---

[8] As described by the court, "[t]his warning card displayed two red skull and crossbones insignias, indicated that only properly protected and authorized personnel should be used to effect cargo transfer, detailed a variety of hazards including the harmfulness of the chemical's vapors, and provided instructions for handling various possible accident or emergency situations."  *Martinez*, 529 F.2d at 462.

17

With respect to the products liability claim, the issue before the court was whether the manufacturer's warnings were adequate under Section 402A. *See id.* at 465–67. Crucially, *Martinez* did not address the threshold issue before this Court—whether the manufacturer was required to provide warnings in the first place.[9] Moreover, in holding that the warnings provided were adequate, the court did not find industry knowledge regarding the hazards of benzene dispositive.[10]

This Court finds *Borel v. Fibreboard Paper Products Corporation* instructive on the circumstances in which the manufacturer of an inherently dangerous product is obligated to provide warning under Section 402A.[11] The plaintiff in *Borel* was an industrial insulation worker who contracted asbestosis and mesothelioma as a result of his exposure to insulation materials containing asbestos. 493 F.2d at 1081. He filed suit against, *inter alia*, eleven manufacturers of the insulation materials alleging negligence, gross negligence, and strict products liability. *Id.* at 1086. In his pre-trial deposition, the plaintiff testified "that he had known for years that inhaling asbestos

---

[9] In fact, by going straight to the issue of whether the warnings provided were adequate, rather than addressing whether warnings were required in the first place, one could argue that *Martinez* impliedly held that Section 402A imposed a duty to warn.

[10] The court also focused on the fact that crew members had actual knowledge of the nature of the barge's cargo, and that it was reasonable for the manufacturer to assume its products would only reach industry professionals. *Martinez*, 529 F.2d at 466–67.

[11] Although jurisdiction was premised on diversity, *Borel* applied the Restatement (Second) of Torts § 402A as Texas substantive law.

was bad for [him] . . . but that he never realized it could cause any serious or terminal illness." *Id.*
at 1081. At trial, the plaintiff introduced evidence that the defendant manufacturers either were,
or should have been, aware of the many articles and studies on the hazards associated with
absestos. *See id.* at 1084–86. The evidence also demonstrated, however, that neither the
plaintiff's employer, the plaintiff's co-workers, nor plaintiff himself was ever warned by a
manufacturer of the danger associated with inhaling asbestos. *Id.* at 1086. The jury found that all
defendants except for two were negligent but that none had been grossly negligent. *Id.* The jury
also found that all defendants were strictly liable. *Id.*

On appeal, the manufacturers challenged, *inter alia*, the jury's finding that their products
were unreasonably dangerous for failure to provide a warning. *Id.* at 1093. They argued that the
danger resulting from exposure to asbestos was "obvious." *Id.* In rejecting this argument, the
court first cited the plaintiff's pre-trial testimony that he was unaware inhalation of asbestos could
cause serious illness. *Id.* The court continued: "[f]urthermore, we cannot say that, as a matter of
law, the danger was sufficiently obvious to asbestos installation workers to relieve the defendants
of the duty to warn." *Id.*

Here, as in *Borel*, the plaintiff testified that he was unaware of the full extent of the dangers
associated with the allegedly defective product until some point *after* he had already been
exposed. More importantly, however, the Court cannot conclude on the record before it that the
danger of exposure to products containing benzene was sufficiently obvious to tankermen like

Plaintiff as to relieve Valero of its duty to warn.  This determination is fact-intensive and must therefore be resolved at trial.  *See Jackson*, 499 F.2d at 812 (finding that whether a danger is sufficiently known as to relieve a defendant of its duty to warn is "an issue for the jury").  Accordingly, summary judgment is denied.

      B. *Negligent Failure to Warn*[12]

      To the extent Valero re-urges its argument that the availability of a Jones Act negligence claim or an unseaworthiness claim precludes a cause of action for negligent failure to warn, that argument is rejected for substantially the same reasons articulated in the previous subpart.  Other than cite the generally recognized rules that the duty to provide a reasonably safe to place work and the duty to furnish a seaworthy vessel are owed by the Jones Act employer and vessel owner, respectively, Valero provides little else in support of its argument.   In fact, to speak of unseaworthiness in terms of "duty" is misleading, as the doctrine of unseaworthiness is predicated without regard to fault or the use of due care.  *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991) (citations omitted).  More importantly, Valero provides no authority, nor can this Court find any, for the proposition that the Jones Act and the doctrine of unseaworthiness morph into a defense which completely relieves a manufacturer of its duty to warn seamen of a dangerous

---

[12] The Court need not address Plaintiff's argument that the alleged violation of certain federal regulations establishes Valero's negligence.  The Court ruled earlier that owners of shoreside warehouse facilities such as GATX owe no duty to Plaintiff.  That reasoning applies with equal force to Valero in its capacity as the owner of a shoreside warehouse facility.  Accordingly, the only negligence claim remaining is against Valero in its capacity as manufacturer.

product.  Adopting Valero's position would be tantamount to declaring that a seaman injured aboard a vessel by a defective product is *per se* precluded from bringing a negligent failure to warn action against the manufacturer.  There is simply no support in the jurisprudence for such a categorical prohibition.

The Court now pauses to consider the extent to which its denial of Valero's request for summary judgment under Section 402A controls the analysis of the second part of Valero's Motion—whether Valero can prove that it has no duty to warn under a traditional negligence analysis.  The causes of action for negligence and strict liability are conceptually different.  As explained *supra*, while the latter focuses on the condition of the product, the former probes the conduct of the defendant.  *See also Jackson*, 499 F.2d at 812.  In failure-to-warn cases, however, "[t]he distinction between the two lessens considerably."  *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 858 (4th Cir. 1980).  For example, the *Borel* court addressed whether a jury's finding of strict liability for failing to warn of a foreseeable danger is inconsistent with a separate finding that the same defendants were *not* negligent in failing to warn of the same danger.  *See* 493 F.2d at 1093–94.  The court summarized the law as follows: "when a failure to give adequate warning is alleged to have made a product unreasonably dangerous, the standard for strict liability is essentially similar to the standard for establishing negligence."  *Id.* at 1093.  Accordingly, the court

found the jury's verdict inconsistent.[13] *Id.* at 1094.  Subsequent Fifth Circuit decisions have noted

the lack of practical difference between negligence and strict liability in the context of a failure-to-

warn claim.[14]  *See, e.g., Gordon v. Niagara Mach. & Tool*, 574 F.2d 1182, 1190 (5th Cir. 1978) ("The

two theories of liability, while conceptually different, for all practical purposes, here merge into a

single breach of duty.") (internal footnote omitted); *Sprankle v. Bower Ammonia & Chem. Co.*, 824

F.2d 409, 413–14 (5th Cir. 1987) ("Although conceptually different, the two theories of liability each

present the [same] essential question . . . . The jury's finding [of] strict liability . . . thus cures any

possible error in . . . not submitting [the] negligent failure to warn claim to the jury.").  *Cf. Hagans*,

576 F.2d at 101–04 (noting that liability does not attach under strict liability or negligence when

the danger is open and obvious or the party to be warned has actual knowledge of the danger)*;*

*Martinez*, 529 F.2d at 463–67 (employing substantially similar analysis when addressing adequacy

of warnings under negligence and strict liability).  But when a failure to warn case such as this one

involves an "unavoidably unsafe product" under comment k of Section 402A, "[a]ny remaining

distinction in theories disappears."  *Werner*, 628 F.2d at 858; *accord Kehm v. Procter Gamble Mfg.*

*Co.*, 724 F.2d 613, 621 (8th Cir. 1983).

Given the foregoing, the Court finds no practical difference in the legal standard to be

---

[13] The court found the inconsistency in the jury's verdict harmless, because there was sufficient evidence to support liability under Section 402A.  *Borel*, 493 F.2d at 1094.

[14] *But see Sprankle v. Bower Ammonia & Chem. Co.*, 824 F.2d 409, 413 n.5 (5th Cir. 1987) (noting the contrary view that strict liability and negligent failure to warn are distinct causes of action).

applied in a failure-to-warn case when the product is inherently dangerous, at least with respect to determining the existence of a duty *vel non.*  Under a negligence or strict liability theory, the duty to warn does not attach when the danger is open and obvious to the ultimate user or consumer.  *See Hagans*, 576 F.2d at 104;[15] *Borel*, 493 F.2d at 1093.  Thus, the Court's denial of the first part of Valero's Motion necessarily requires the second part be denied as well.

IV.   Plaintiff's Cross Motion for Summary Judgment as to Valero

Plaintiff moves for summary judgment on various affirmative defenses asserted by Valero. The parties essentially re-urge the arguments made in support of and in opposition to Valero's Motion for Summary Judgment.  Thus, much of the Court's previous analysis applies to the instant Motion.

A.  *Sixth Defense*

Valero's sixth defense is that "it owed no duty to the Plaintiff."  This defense, however, is not an affirmative defense.  An affirmative defense is one on which the defendant bears the burden of proof of trial.  *See Crescent Towing & Salvage Co., Inc., v. M/V ANAX*, 40 F.3d 741, 744 (5th Cir. 1994).  The existence of a duty to warn is a *prima facie* element of the plaintiff's case, regardless of whether the plaintiff invokes Section 402A or general principles of negligence.  As

---

[15]  *Hagans* also states there is no duty to warn if the party to be warned is already aware of the danger.  576 F.2d at 102, 104 (citations omitted).  While this statement is technically correct, it is somewhat misleading in that it implies the plaintiff bears the burden of proving lack of knowledge.  As explained more fully below, actual knowledge is an affirmative defense.

discussed *supra*, this issue will be decided at trial.

   B. *Eighth Defense*

Valero's Eighth Defense reads as follows:

> Alternatively, to the extent that the Plaintiff suffered any injury, which is denied, such injury was caused by Plaintiff's own fault and/or negligence and/or inattention and/or omissions in the following, but not exclusive, respects:
>> A. In failing to wear proper personal protective equipment, gear, and other safety apparel designed to protect against any alleged exposure to "chemicals and solvents" alleged to be harmful;
>> B. In failing to properly care for the above-mentioned protective equipment;
>> C. In failing to follow instructions pertaining to protection against exposure to "chemicals and solvents" alleged to be harmful;
>> D. In failing to take proper precautions against the exposure to "chemicals and solvents" alleged to be harmful;
>> E. In failing to exercise due care under the circumstances; and,
>> F. Any and all other negligent or wrongful acts or omissions that may be discovered or proven at the trial of this matter.

Plaintiff repeatedly characterizes this defense in his Motion as "failure to follow instructions."  Thus, Plaintiff only moves for summary judgment on Part C of the Eighth Defense. Unfortunately, because Plaintiff largely rehashes word-for-word arguments made in his opposition memorandum to Valero's Motion, he does not address directly why the entry summary judgment is appropriate as to this particular defense.  Plaintiff's argument appears to be that since Valero provided no warnings, there were no "instructions" for Plaintiff to ignore in the first place.

In response to Plaintiff's Motion, Valero employed the same tactic as Plaintiff, namely, to copy and paste arguments from memoranda associated with a different motion.  Nonetheless, Valero has identified evidence in the record that creates a genuine factual dispute as to whether warnings were provided at Valero's dockside facilities.  Accordingly, summary judgment on this affirmative defense is denied.

C.  *Thirteenth Defense*

Valero's Thirteenth Defense is that the chemicals and solvents at issue in this case "presented no unreasonable risk of harm."  Again, this is not an affirmative defense—Plaintiff bears the burden of proving a product defect.  The existence of an alleged defect for failure to warn will be decided at trial, as discussed *supra*.

D.  *Fourteenth Defense*

Valero's Fourteenth Defense reads as follows:

> Alternatively, and on information and belief, the "chemicals and solvents" at issue in this case were at all pertinent times manufactured and distributed in a manner consistent with, and in compliance with, the known and existing technology and knowledge comprising the state of the manufacturers' art, and in keeping with all federal and state regulations.

Plaintiff focuses on only part of this allegedly affirmative defense—that the chemicals and solvents were manufactured and distributed in compliance with federal and state regulations.[16]  Once again,

---

[16] Plaintiff does not address the so-called "state-of-the-art" defense.  Moreover, the Court has serious doubts as to whether this defense applies in a failure-to-warn case under the general maritime law.

the Court doubts whether this is really an affirmative defense.  The violation of a statute goes more

towards establishing an element of Plaintiff's claim, namely, whether Defendant breached a duty

of care.  Nonetheless, as discussed *supra*, Valero has raised a triable issue as to whether it complied

with certain federal regulations governing dockside facilities.  Accordingly, summary judgment on

this defense is denied.

> E. *Fifteenth Defense*

Valero's Fifteenth Defense reads as follows:

> Alternatively, and on information and belief, the Plaintiff and
> Plaintiff's employers were at all pertinent times sophisticated
> handlers of the "chemicals and solvents" at issue in this case, who
> knew or should have known of the risks inherent in the use and
> handling of those "chemicals and solvents," and to whom Valero
> owed no duty to warn.

Valero appears to assert two separate affirmative defenses here: (1) that Plaintiff had actual

knowledge of the hazards associated with handling Valero's products; and (2) that Plaintiff's

employers were "learned intermediaries."  Plaintiff's Motion does not address the latter defense

whatsoever.  Indeed, Plaintiff does not even mention his employers by name, much less discuss

whether they were learned intermediaries upon whom Defendant may rely to provide warnings.[17]

"Actual knowledge" is indeed an affirmative defense.  *See Pavlides*, 727 F.2d at 340 ("Where

a plaintiff has made out a prima facie case of 'failure to warn' of a hazard, the manufacturer may

---

[17] The Court expresses no opinion as to the applicability of the learned intermediary defense in this
case.

assert as an affirmative defense that the user already had actual knowledge of that specific risk.");

*see also* Restatement (Second) of Torts § 402A cmt. n ("If the user or consumer . . . is aware of the

danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it,

he is barred from recovery.").  Plaintiff has introduced deposition testimony tending to establish

that he was unaware of the hazards associated with handling benzene until well after he began his

career as a tankerman.  Defendant points to nothing in the record to controvert this evidence.[18]

Accordingly, summary judgment on this issue is granted and Valero is precluded from asserting the

affirmative defense of actual knowledge.


**CONCLUSION**

For the reasons previously stated, GATX's Motion for Summary Judgment is GRANTED and

Plaintiff's cross Motion for Summary Judgment DENIED AS MOOT.  No claims remain against GATX.

Accordingly, GATX is dismissed from this suit.

Valero's Motion for Summary Judgment is DENIED.  Genuine issues of material fact are

present as to whether Valero's products were defective.  Plaintiff's cross Motion for Summary

Judgment is GRANTED IN PART.  Valero  is precluded from asserting the affirmative defense of

actual knowledge.

---

[18] A general allegation that Plaintiff or others *should have known* of the danger is clearly not
sufficient.

New Orleans, Louisiana, this 4th day of October, 2013.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**